## Gutekunst, etc., v. Huber

*Caldwell, Fox & Stoner*, for use-plaintiff.
*Earl V. Compton*, for defendant.

WICKERSHAM, J., October 14, 1937.—This is a motion for judgment for want of a sufficient affidavit of defense.

The facts are as follows: Suit was entered to no. 544, September term, 1935, on behalf of Elsie Gutekunst, by her next friend, Carl P. Gutekunst, against Harry B. Huber and Max Heiss. On April 29, 1936, the case was tried which resulted in a disagreement by the jury. Another trial was had and on April 6, 1937, the jury brought in a verdict in the amount of $825 and costs against both defendants. The defendant, Max Heiss, paid the verdict, and on April 30, 1937, Carl P. Gutekunst, next friend of Elsie Gutekunst, assigned the verdict to Max Heiss. On May 1, 1937, Max Heiss, in turn, assigned the judgment to Automobile Underwriters, Inc., attorney in fact for the subscriber, the State Automobile Insurance Association. On May 4, 1937, the last-named assignee issued a sci. fa. to no. 419, March term, 1937, to revive the judgment. On July 7, 1937, an affidavit of defense was filed, contending that the next friend of Elsie Gutekunst had no right to make the assignment, and on August 2, 1937, the plaintiff asked for a rule for judgment for want of a sufficient affidavit of defense which is now before the court for decision, as well as the petition to amend said affidavit, and the answer thereto. When Max Heiss paid the verdict and costs, through an oversight on the part of the prothonotary judgment was never entered of record on this verdict. However a petition was later presented

asking the court to order the prothonotary to enter judgment nunc pro tunc as of April 30, 1937, and an answer was filed to said petition. This matter has been disposed of by us in an opinion filed herewith to no. 544, September term, 1935, in which we directed the judgment to be entered nunc pro tunc, as requested.

### Questions involved

1. Had Carl P. Gutekunst, next friend of Elsie Gutekunst, authority to assign the above-mentioned verdict?

2. If the first question is answered in the negative, is Max Heiss, who paid the judgment, entitled to an equitable assignment thereof in order that he may enforce contribution from Harry Huber, his codefendant?

### Discussion

It is contended by counsel for the defendant that Carl P. Gutekunst (whose only interest was as next friend), without authority of the court, attempted to assign the cause of action to Max Heiss, defendant, who in turn sought to assign it to the Automobile Underwriters, Inc.; and that Carl P. Gutekunst as next friend had no power to make the assignment, and the Automobile Underwriters, Inc., had no standing to issue the scire facias.

Counsel for the defendant also contends that, in addition, Heiss was joint tortfeasor and payment by him, or on his account, terminated all liability in the action and there was no right of contribution for the reason that the plaintiff's statement in the basic proceedings set out a claim, among other things, that Karl Gutekunst came to his death because of the operation of a motor vehicle by said Max Heiss at a high and unlawful rate of speed; and that the amended affidavit of defense further set out that the evidence upon which the jury's verdict was found supported this allegation and would justify the jury in finding that the injury to the plaintiff was due to the operation of a motor vehicle by Max Heiss at a high and unlawful rate of speed; that Max Heiss knew that his

act in operating his motor vehicle at a high and unlawful rate of speed was wrongful and that he committed the injury to the plaintiff by wantonly operating said motor vehicle at a high and unlawful rate of speed.

Counsel for defendant, in support of his contentions, relies on the case of Goldman et al. v. Mitchell-Fletcher Co., 292 Pa. 354, which holds:

"Subrogation is an equity called into existence for the purpose of enabling a party secondarily liable, but who has paid the debt, to reap the benefit of any securities or remedies which the creditor may hold as against the principal debtor and by the use of which the party may thus be made whole. . . .

"The general rule that there can be no contribution among joint tort-feasors applies only where there has been an intentional violation of the law, or where the wrongdoer knows or is presumed to know that the act was unlawful.

"The rule does not apply to torts which are the result of mere negligence.

"Where a judgment is recovered against one of two parties guilty of joint negligence, such party, on paying the judgment, has a right to have the judgment marked to his use, so as to enforce contribution from the other party guilty of the joint wrong."

We are at a loss to understand how this decision supports the contention of counsel for the defendant. We quote from the opinion of Mr. Justice Schaffer, p. 358 et seq.:

" 'The rule that there can be no contribution among wrongdoers has so many exceptions that it can hardly with propriety be called a general rule. It applies properly only to cases where there has been an intentional violation of law, or where the wrongdoer is to be presumed to have known that the act was unlawful': Bailey v. Bussing, 28 Conn. 455. 'We must look for personal participation, personal culpability, personal knowledge. If we do not find these circumstances, but perceive only a liability

in the eye of the law, growing out of a mere relation to the perpetrator of the wrong, the maxim of law that there is no contribution among wrongdoers is not to be applied. . . . The rule that wrongdoers cannot have redress or contribution against each other, is confined to cases where the person seeking redress must be presumed to have known that he was doing an unlawful act': Ibid., pages 459, 460. . . . 'But the rule is to be understood according to its true sense and meaning, which is where the tort is known, meditated wrong.' 'Modern decision has limited the doctrine to situations where the person who claims contribution must be presumed to have known that he was doing an unlawful act': Street's Foundations of Legal Liability, vol. 1, page 490. 'Even though a person has actually participated in the wrong, the rule that wrongdoers cannot have redress or contribution against each other is confined to cases where the person seeking redress must be presumed to have known that he was doing a wrongful act, or where the wrong committed was in itself illegal': 13 C. J. 830. 'The rule that the wrongdoers cannot have redress or contribution against each other is confined to cases where the person seeking redress must be presumed to have known that he was doing an unlawful act. If he knew the act was illegal, or if the circumstances were such as to render ignorance of the illegality inexcusable, then he will be left by the law where his wrongful action has placed him': Cooley on Torts, vol. 1, 3d ed., page 259, sec. 171.

"The doctrine of no contribution between joint tortfeasors had its origin in cases where there was an intentional wrong done to the plaintiff by the joint defendants."

We can recall no evidence at the trial which indicated that the defendants in this case intended to do an unlawful or wrongful act. Max Heiss was driving with the decedent, Karl Gutekunst, north on Cameron Street, in the City of Harrisburg. Huber, the other defendant, was operating his automobile south on Cameron Street, and attempted to make a left turn into Walnut Street; he mis-

calculated the rapidity with which Heiss' car was moving, and a collision occurred at the intersection. The car driven by Heiss upset and Gutekunst was so seriously injured that he died very soon afterwards. We think Huber was negligent; he miscalculated, as we have said, the speed at which the car driven by Heiss was approaching, and the collision occurred. There was nothing in the evidence which indicated that either of the defendants intended to do an unlawful act, and the evidence rebuts any presumption that they knew they were doing an unlawful act. For that reason we do not find anything in the case from which we have quoted which would indicate that contribution between the defendants should not be made. Heiss paid the judgment, as appears by the record. He now seeks contribution from Huber, his co-defendant.

In Feldman et al. v. Gomes et al., 98 Pa. Superior Ct. 84, at pages 86, 87, it is said:

"A co-defendant has a right to be relieved from the unjust position of paying the entire judgment recovered for the wrong done by both. This is an application of equitable principles. The legal plaintiffs have no claim, for they have been paid. The use-plaintiff takes their place, but to obtain contribution from the uninsured defendant, it must work out the scheme through the defendant on whose behalf under the contract of insurance it has paid the claim. It cannot be subrogated to a claim which does not exist in the co-defendant. As between the two defendants, the contribution is not a matter of recovery for a tort. It is a liability arising from an implied engagement to jointly contribute for the wrong done. It is a mere debt arising from an equitable duty, having none of the elements of a tort."

It will be observed the facts in the above case are similar to those in the instant case. The automobile of Gomes collided with that of Abel and as a result Millie Feldman was injured. She and her husband brought suit charging both defendants with negligence and recovered judgment

against them. Abel was insured and the insurance company settled with the plaintiffs through its attorney and the judgment was marked to the use of Leon Sperling, the real assignee being the insurance company. The use-plaintiff issued a ca. sa. against Gomes, who thereupon presented his petition alleging the facts above set forth and asking that the writ be quashed. The court below granted his prayer. We quote from the opinion of Judge Trexler, p. 86, as follows:

"It is a familiar principle of law that the courts will look behind the nominal parties of the record to determine their respective rights, but in this case, it is not necessary to do this, for in his answer to the rule, the use-plaintiff admits that he is acting for the Commonwealth Casualty Company who was the insurer of Abel, the co-defendant of Gomes.

"The question is what are the rights of one who under such circumstances is seeking contribution? There can in such a case as this be subrogation where a judgment is recovered against one of two parties guilty of joint negligence and the party paying the judgment has a right to have the judgment marked to his use. Goldman v. Mitchell-Fletcher Co., 292 Pa. 354."

In Bailey v. C. Lewis Lavine, Inc., et al., 302 Pa. 273, it was held, in the absence of wilful wrong, contribution may be recovered from those jointly liable for a tort; that the plaintiff may recover but one satisfaction, but the trial court may so mold the proceedings as to do equity among the defendants.

In Geraci et al. v. Lerner et al., 18 D. & C. 112, it was held that payment of a judgment by one of two defendants guilty of joint negligence does not extinguish it, but contribution may be enforced in the same action by marking the judgment to the use of the defendant who has paid more than his fair and equitable share of the common liability.

It is proper and legal that this proceeding should be brought in the name of the next friend and it is not neces-

sary that the plaintiff, Elsie Gutekunst, should have a guardian appointed by the court and that the action should be brought in the name of such guardian: Heft & Hix v. McGill et al., 3 Pa. 256.

The chief contention of counsel for the defendant is that there was no authority on the part of Carl P. Gutekunst, as next friend, to assign this verdict to Max Heiss. We are not in accord with this contention. In Smith v. Bergdoll, 15 D. & C. 365, it was held:

"Counsel of record for a minor suing by his next friend has authority to receive and receipt for money due upon a judgment obtained in a suit for personal injuries sustained, and payment by defendant to such counsel is binding upon the minor."

If counsel can so proceed, why may not the next friend also proceed to assign a verdict or judgment which has been paid to him by one of the defendants? We think to state this question is to answer it.

In Stroyd v. Traction Co., 15 Pa. Superior Ct. 245, the ruling is to the same effect. In this case the verdict was returned for the plaintiff for $250 and immediately thereafter the attorney employed by appellant's father receipted on the record for the amount of the verdict without waiting to enter judgment thereon. At the same time the father recovered $250 on a suit in his own name for loss of services of this boy, which was receipted at the same time. This was a proceeding against a defendant to show cause why receipt and satisfaction on the record should not be stricken off and judgment entered for the petitioner on the verdict. It appeared that the plaintiff who was a minor had a guardian legally appointed. We quote from the opinion of Judge Porter, p. 249:

"The authority of the prochein ami, and of the attorney appointed by him, to collect from the defendant and satisfy the judgment, cannot be exercised regardless of the right and power of a regularly constituted guardian having charge of the infant's estate. Such right of the prochein ami or his attorney is subordinate to that of the lawfully

constituted guardian, and where such guardian exists no person other than the guardian himself, or some person deriving authority from him, can legally receive and receipt for money due the ward. In the present case there was no guardian, and payment by the defendant to the attorney of record was binding upon the infant."

In the instant case there was no guardian and payment by Max Heiss to the next friend of Elsie Gutekunst we think was binding upon her.

On the question of the nature of the duties which a prochein ami is called upon to discharge, it was also said by Judge Porter in Stroyd v. Traction Co., supra, p. 248:

"The nature of the duties which a prochein ami is called upon to discharge does not require that he should be vested with a discretion to compromise or bargain away the rights of the minor, and he is without power to bind the infant by a contract of that nature. . . . It was held in Morgan v. Thorne, 7 M. & W. 400, that the prochein ami was to be considered as an officer of the court, specially appointed to look after the interests of the infant, on whom the judgment in the action is consequently binding, and he cannot be allowed, on attaining full age, to commence fresh proceedings founded on the same cause of action. And it was in that case distinctly asserted 'that the defendant, in this and all similar cases, is perfectly safe in paying the damages recovered.' "

In O'Donnell v. Broad et al. (No. 2), 2 Dist. R. 84, it was held:

"The next friend of an infant plaintiff in a judgment for personal injuries, cannot release or compromise the claim of the infant, especially after it has been prosecuted to judgment.

"He may, however, receive the money recovered from the defendant, give a sufficient acquittance, and satisfy the judgment."

Writing the opinion of the court, it was said by President Judge Rice:

"A *prochein ami* has not the powers of a general guardian. He is but a species of attorney appointed by the court, or admitted by the court without formal appointment, to look after the interests of the infant and to manage the suit for him, and may make such arrangements as will facilitate the determination of the case in which the rights of the infant are involved, but cannot, by admissions or stipulations, surrender the rights of the infant. It is too plain for argument that he cannot release or compromise a claim of the infant, especially after it has been prosecuted to judgment. 'The court, whose duty it is to protect the interests of the infant, should see to it that they are not bargained away by those assuming, or appointed, to represent him'. . . . As to the second question there have been different rulings. In some courts it has been held that the authority of the *prochein ami* ends when the suit is prosecuted to judgment, and therefore that he has no authority to receive the money. The question has not been raised in this state, so far as we know, and, in the absence of any authoritative ruling to the contrary, we are disposed to adopt the rule laid down in the case of Balto. R. R. v. Fitzpatrick, 36 Md. 619, where, following the English decisions, it was held, that, although the general rule is that the *prochein ami* is not a party to the suit, he has authority to employ an attorney and to carry on the suit to judgment, and if there is no guardian of the infant, he may receive the money recovered from the defendant, give a sufficient acquittance therefor, and enter the judgment satisfied."

In Turner v. Patridge, 3 P. & W. 172, it appears that a grandfather devised to his grandsons a tract of land, which, by his will, he directed should be patented, and the price thereof paid out of his estate; an uncle of the devisees obtained the patent and paid for it, and brought an action against the executors of the grandfather's estate to recover it back. It was held that a prochein ami is recognized by the laws of Pennsylvania, and our practice for certain purposes, but never as having the power of a trus-

tee or guardian. The court below was of the opinion, and so instructed the jury, that a court of equity would recognize the acts of Patridge as a prochein ami to the devisees, and if he acted in good faith in procuring the patent, he was entitled to recover the amount paid by him for the patent, with interest, and a reasonable compensation for his services in the business. The judgment of the court below was reversed in an opinion written by Chief Justice Gibson, from which we quote:

"An infant may *sue* [italics ours] by his next friend appointed, at the common law, by the court in which the action is pending, and by our practice, without any appointment at all, in order to supply the want of capacity in the infant to afford in his own person, a party responsible on the record for the costs; but as the execution of the trust is under the supervision and control of the court, there is no reason why our practice of constituting a *prochein-ami*, without the express sanction of the court, should be disturbed. Such a next friend is in the nature of a guardian *ad litem*, the chief difference being, that the former is the *curator* of an infant plaintiff, and the latter of an infant defendant. . . . But it would be another matter to permit an arbitrary and irresponsible agent to affect the estate of the infant, or acquire rights of his own, by acts *in pais*. Every thing might have been regularly done on the part of the plaintiff, by procuring the authority of the guardian, if there were one, or by becoming guardian himself. But it would be not only dangerous, but unwarranted by any principle of law, to recognize an irregular guardianship like the present; and though desirous to give effect to the imperfect obligation that evidently rests on the defendants, yet, sitting in a court whose judgments are precedents for transactions, the morality of which may happen to be the other way, we must not let the hardship of the case warp the abstract principle by which it is to be governed."

See also Tripp v. Gifford (Supreme Judicial Court of Massachusetts), 155 Mass. 108, 29 N. E. 208. In this case

an action was brought by the father of plaintiff as next friend. Before trial the court removed him, and appointed another person in his place. At the trial defendant offered to show, both in bar of the action and upon the question of damages, that the father, while acting as next friend and intending to protect plaintiff's interests, had, out of court, and in good faith, made a settlement with defendant, who had paid him $50, which both intended should be a full settlement. It was held that such evidence was rightly excluded, as such settlement was in excess of the powers of the next friend.

We cannot agree with the allegation that the assignment of the said Carl P. Gutekunst passed no title to Max Heiss in this proceeding; nor can we hold, since the said Max Heiss was a joint tortfeasor and paid the judgment in full, that Harry Huber is released and discharged from said obligation.

We can think of no reason why a next friend may receive the money due to the minor which he is guarding, and yet is not authorized to assign the verdict or judgment to the person who made the payment. By law perhaps he is not authorized so to do, but in equity we think that Max Heiss is entitled to an equitable assignment of the verdict and judgment in the instant case in order that he may enforce contribution from his codefendant. Equity considers that as done which ought to be done. We are of opinion, therefore, that Max Heiss, having paid the judgment against himself and Huber, is entitled to recover contribution from Huber. See Bispham's Principles of Equity (9th ed.), sec. 338.

The motion for judgment for want of a sufficient affidavit of defense must be made absolute.

And now, October 14, 1937, it is ordered, adjudged, and decreed that the rule granted by this court upon Harry Huber, the above-named defendant, to show cause why judgment should not be entered against him for want of a sufficient affidavit of defense, is made absolute. Costs to be paid by the defendant, the said Harry Huber.