# Ross *versus* Barclay.

1. An administrator *de bonis non* with the will annexed has no power in Pennsylvania, under the 67th section of the Act of 24th February, 1834, relative to executors and administrators, or otherwise, to execute a trust, reposed in executors under a will, not connected with the office of executor, but reposed in them *as trustees*.

2. Where a person *domiciled in New York*, in his will authorized his executors to sell certain lands in Pennsylvania, not for the purpose of paying debts, but upon certain trusts, some of which were for investment and accumulation and eventual distribution between the devisees, this was not such a power as could be exercised by an administrator *de bonis non* with the will annexed appointed in Pennsylvania, even though the latter was appointed upon the renunciation of the executors so far as the estate in Pennsylvania was concerned.

3. The renunciation of the executorship and trust so far as the lands in Pennsylvania were concerned was void, and did not make room for a separate administration in Pennsylvania of any part of the will.

4. The 67th section of the Act of 24th February, 1834, puts an administrator with the will annexed on a footing with *a surviving executor*, but not on a footing with a testamentary trustee.

ERROR to the Common Pleas of *Cambria county*.

This was an action of ejectment instituted in the Court of Common Pleas of Cambria county by Henry Barclay *v.* James Ross and

[Ross *v.* Barclay.]

others, to recover the possession of a large body of land situate in that county. The plaintiff below, Henry Barclay, as the inception of his title, gave in evidence forty-four warrants, dated respectively the 28th of January, 1794, and surveys made in pursuance of the said warrants. Amongst the said warrants, were three granted in the names of Andrew Gordon, William Barton, and William Brodie, respectively. All these tracts, except the three just designated, were sold by the treasurer of Cambria county, to *William Bayard and Henry Barclay*, and deeds executed therefor, on the 30th Dec., 1822. To show an assessment upon the three tracts above named, the plaintiff gave in evidence assessments of taxes to William Bundle, W. Bundell or Brindle, William Brindle, William Brodel, W. Bratton, Wm. Bratton, A. Garder, Andrew Garder, and Andrew Graydon; but no assessment of taxes to Andrew Gordon, William Barton, or William Brindle. But the plaintiff proved that in the assessment of 1825, the county treasurer altered one of the assessments from William Brindle to William Brodie. All these assessments were given in evidence, under exception, and the reception of the same constituted the first *ten* errors assigned.

The plaintiff gave in evidence, three deeds, dated 5th of October, 1826, from Stewart Steele, county treasurer, *to William Bayard and Henry Barclay*, for three tracts of land warranted in the names of William Brodie, William Bratton or Barton, and Andrew Graydon, respectively, which were also objected to on behalf of the defendants; the objection was overruled, and the decision of the Court was the subject of the *eleventh* error assigned.

William Bayard and Henry Barclay, the grantees in all the deeds from the treasurer, were residents in the state of New York. Wm. Bayard died in New York, previous to the 11th of Oct., 1826, after having made his last will and testament, bearing date 24th Feb. 1826 and proved on the 11th Oct. 1826. By this will, William Bayard devised all the residue of his real and personal estate *to his executors, upon certain trusts,* viz.: To continue for two years a partnership in which the testator was engaged; to lease his real estate, and to make sale of the same (except the house and premises devised to his wife). He desired that his estate be so invested as in the opinion of the executors would render it most productive, and the income be again invested, so that it may accumulate until the death of his wife, and afterwards the rest and residue of his estate to be distributed as directed in the will. The will contained a subsequent clause as follows: Item; I hereby *authorize and empower my executors hereinafter named, or the survivors or survivor of them, to sell, grant, and convey, all and singular my real estate, except the house and premises herein before devised to my wife; or to lease the same for terms of years, as they in their discretion may deem best.* Lastly, he appointed four executors, viz., his wife, his two sons, and his son-in-law,

Pearsall Campbell. The will was proved in the city of New York, and letters testamentary granted to William Bayard and Robert Bayard, two of the executors. A certified copy of the will and probate in New York was filed in the register's office of Cambria county, together with a renunciation by the executrix and the three executors of the "*executorship and to the administration of the goods and chattels, credits and effects, which were of the said William Bayard, deceased, within the Commonwealth of Pennsylvania,*" and they authorized Edward Shoemaker of the county of Cambria, Pennsylvania, to apply for and take out letters of administration. This paper was dated the 19th March, 1846. Letters of administration were subsequently granted to Edward Shoemaker, and he, as administrator *cum testamento* annexed, afterwards executed a deed to Henry Barclay, the plaintiff, for 52 tracts of land, including the land in dispute in this case. The deed was dated May 14, 1846, the consideration stated to be $50.

The will of William Bayard was given in evidence; also the letters of administration with the will annexed.

The deed by Shoemaker was offered on the part of plaintiff. It was objected to, upon the ground that it was inoperative, and passed no interest in the lands therein described; that the power to sell and convey the lands remained in the executors. It was admitted, and exception was taken on the part of the defendants.

It was observed by counsel of plaintiffs' in error, that the will of William Bayard being dated 24th February, 1826, being anterior to the conveyances from the county treasurer, dated 5th October, 1826, did not operate upon the property conveyed by those deeds; that such was the law of Pennsylvania at that time.

The 67th section of the Act of 1834, relating to executors and administrators, provides that "all and singular the provisions of this act, relative to the powers, duties, and liabilities of executors, are hereby extended to administrators with a will annexed."

July 5, 1848, a verdict was rendered for the plaintiff. October 5, 1848, judgment.

Ten errors were assigned to the receiving in evidence certain duplicates of assessments for certain years, and returns of unseated lands, &c.

11. To the receiving in evidence the three deeds from the county treasurer of Cambria county, to William Bayard and Henry Barclay.

Those eleven errors were all of the same character, and rested upon the fact that no warrants and surveys were given in evidence in the name of William Bratton or Andrew Gardner, Andrew Garder or Andrew Graydon; and that the treasurer, not being one of the officers authorized by law to assist in the assessment of taxes, had no authority to alter the name of Brindle or Bundel to Brodie; and from the names of the persons or warrantees, to

Q

whom these taxes were assessed, there was no notice to the owner; nor was there any assessment, in point of fact, of the several tracts warranted to William Barten, Andrew Gordon, or William Brodie. The case in 6 *W. & Ser.* 520, Thompson *v.* Fisher, and the case of Dunn *v.* Ralyea, *Id.* 475, were cited to this point that in assessments of unseated lands, the land must be so designated as to lead the owner to the knowledge that it is his land which is assessed.

The twelfth assignment was that the Court erred in receiving in evidence the deed from Edward Shoemaker, administrator *cum test. annexo* to Henry Barclay, dated May 14, 1846, as the same was totally inoperative and unavailable to pass the title, the power to sell and convey the lands therein described remaining in the executors of William Bayard, in the state of New York.

The case was argued by *White* and *Williams*, on the part of the plaintiffs in error, defendants below.

It was observed, that these lands, *inter alia*, were devised specifically in trust, and power was conferred upon the executors of a confidential and responsible character, beyond the case of ordinary executors; therefore they held these lands as *trustees*, not as executors: 7 *Barr* 459, Wheatly *v.* Badger; 9 *Barr* 416, Johnson's Appeal; and 1 *W. & Ser.* 288, Baird's case.

In principle, this case cannot be distinguished from the cases last referred to; and as the executors did not take these lands *virtute officii*, but as trustees, if it was deemed necessary to change the trustees, the only tribunal having jurisdiction was the Court of Common Pleas.

It is under the 12th section of Act of March 26, 1832, that the register is authorized to grant letters testamentary upon a copy of a will. It provides that proceedings may be had with the same effect, *so far as respects the granting* letters testamentary, &c., as upon the original; but it was not intended to go any further, or to give further efficacy to them. They were intended to be auxiliary to the original letters testamentary, to enable the administrator *cum testamento annexo* to do what the executor could not do—to collect outstanding debts in this state, and after paying any debts due to our own citizens, to remit the balance to the executor, but not to interfere with powers conferred by the common law on the executors, and which were exercisable anywhere, and which did not require the assistance of any of our Courts to enable them to fulfil the power and authority vested in them. What shows that such was the intention of the framers of that Act of Assembly, is the fact that no particular form of probate is required; and under this section, if a will is proven according to the law of the domicil, even by one witness, the register is to issue letters. This clearly proves that it was never intended to authorize the administrator to meddle with the real estate.

[Ross v. Barclay.]

The 67th section of the Act of 23d of February, 1834, extends the power of executors to administrators with the will annexed. This was intended to prevent a failure of the intention of the testator, by the death or refusal of the person he had designated to carry out that intention ; but cannot apply to a case like the present where the executors were also trustees in full life, and in the exercise of the other duties which had devolved on them as trustees and executors, and where they were fully capable of discharging the duty which the administrator had undertaken to perform. Both cannot have the power ; and the trustee cannot, by his own act, without the decree of the proper Court, be discharged from the performance of part of his duty, while he retains the power and wish to discharge the residue.

If the *executors* of William Bayard can convey those lands, as contended on the part of the plaintiff in error, the deed of Edward Shoemaker, the administrator, &c., is a nullity.

*Miles*, with whom was *Banks*, for defendant in error.

The opinion of the Court, filed Nov. 20, 1851, was delivered by GIBSON, C. J.—It is said by Mr. Jarman, and perhaps every other text-writer on wills, that a devise is a species of conveyance ; and that for this reason it is, that *after purchased land* would not pass by it at the common law ; consequently a trust of land created by will is of the same stamp as a trust created by deed. The executors of this will took, not merely a naked power to sell, but the legal title to the land, and on very special trusts. " I give, devise, and bequeath," says the testator, " unto my executors hereinafter named, all and singular the rest and residue of my estate, real and personal, upon the trusts, and for the purposes, hereinafter named." He then declares the trusts ; and, *ex majori cautela*, gives the survivor or survivors of the trustees power to convey.

The transfer of real property is governed by the *lex loci rei sitæ ;* and no statute of Pennsylvania empowers an administrator with the will annexed, to execute a trust of land confided to an executor by title or by name, for any other purpose than to sell for payment of debts. By force of the Act of the 24th of February, 1834, relating to executors and administrators, he may execute a power to sell in order to bring the land into a course of administration, but not to execute a trust for a collateral purpose ; for instance, to manage the property and invest the proceeds for accumulation ; or to maintain the widow and children ; or to turn the land into money for the convenience of partition ; or to exercise any discretionary power confided to his predecessor in the administration for his personal fitness and fidelity. For purposes purely administrative, the thirteenth and fourteenth sections give the devise of a power the effect of a devise of the title, and the

[Ross *v.* Barclay.]

sixty-seventh section puts an administrator with the will annexed on a footing with a surviving executor, but not on a footing with a testamentary trustee. The object was to prevent the object of a power given to several, from being frustrated by the death or renunciation of one or all of them—not to vest the execution of an unofficial trust in a stranger to the testator's confidence. True it is that, for the purpose of selling "*or otherwise*," the fourteenth section gives a surviving executor, and consequently an administrator with the will annexed, the same interest in, and power over the estate, as all the executors might have exercised for the same purpose; but as trusts survive on the principles of joint-tenancy, the section seems to have been enacted as to them, *ex majori cautela*, or for such as are annexed to an ordinary administration; not to those which might as well have been placed elsewhere. On the foot of the maxim that when different rights meet in the same person, they are to be treated as if they were in different persons, Courts of equity, recognising the union of executor and trustee in the same individual *reddendo singula singulis*, have considered real estate directed to be sold for payment of debts, as equitable assets, and consequently as the subject of a trust; and though the principle was doubted for a time, it has been finally established by Newton *v.* Bennet, 4 *Bro. Ch. R.* 137; Walker *v.* Meager, 2 *P. Wms.* 552; 2 *Fonb.* 398 note, and *Hargr. Co. Lit.* 113 note. Now the object of the statute was to make lands legal assets in all cases; not to confound the distinction between trusts and powers. With us land has perhaps always been legal assets; and when a trust is created to bring it into a course of administration, it is proper that an administrator should succeed to the execution of it; but the statute was not intended for a trust unconnected with an executor's ordinary duties.

How could the administrator in Pennsylvania, execute the trusts under this will in New York? The trustees of the entire estate were directed to continue for a time the partnership of the testator with his sons, and, after the dissolution of it, to invest the estate for accumulation till the death of the widow, and then divide it among the children. If the administrator were a trustee for any purpose, he would be a trustee for every purpose; and it would be difficult to determine whether he should act in the execution of the trust separately or conjointly. It would be a strange sort of trust that would admit of such participation. If he could not act as a trustee at all, what would become of the money in his hands? As there were no debts to be paid, remit it to the executors at the place of the domicil. What! to persons who having renounced the administration of it, had parted with their title to receive it, and had no power to give an acquittance for it? That could not be.

A trustee who accepts cannot renounce. It is unnecessary to

[Ross *v.* Barclay.]

quote an authority for that. He can be discharged only by the decree of a Court of Equity whose power in this state is vested in the Common Pleas; by force of a provision in the deed, or by consent of all the parties interested; and though I know of no case in point, I do not hesitate to pronounce that his acceptance, like that of an executor, must be entire. The rule as regards an executor, and the executors in this case have been treated exclusively as such, is stated in Fowler *v.* Cook, 1 *Salk.* 297; Anon., *Brownl.* 82; 11 *Vern.* 139; and the case of a trustee is manifestly within the reason of it. Indeed, for purposes of administration, an executor is considered in equity as a trustee. On that ground, the renunciation of the executorship and trust, so far as regards the lands in Pennsylvania, was void, and made no room for a separate administration of any part of the will. There was no power to sell for any purpose connected with the office of an executor, and no administrator could execute it. The act of the executors in New York was an entire acceptance of the trust, or an entire renunciation of it. If the former, there could be no administrator; if the latter, there could be an administrator only for the ordinary duties of one: *quacunque via data,* an administrator could not convey. The proper way to transfer the testator's title to these lands was, to accept the trust entire, or to reject it entire, and procure the appointment of a trustee in Pennsylvania. The executors attempted a middle course, and it failed.

Judgment reversed.