Catharine Brown Groome, Appellant, v. Emma Byrne Belt, Alfred Byrne Horner and Charles Gustavus Horner, and Alfred Byrne Horner and John Williams Belt, Executors of Gustavus Richard Brown Horner, Deceased.

*Trusts and trustees—Illegitimates—Voluntary settlement—Substitution of property—Laches.*

Where a person executes a voluntary declaration of trust as to a house in favor of an illegitimate daughter and her mother, and subsequently, during the minority of the daughter, by an arrangement with the mother, exchanges the house for a more valuable one, and executes a similar declaration of trust as to the second house, and a few years after this conveys the second house absolutely to his daughter, who receipts for it "in full, thereby releasing them (grantor and wife) from all taxes, water rents, and other claims," the daughter seventeen years after she has become of age, and after the death of her father, cannot set up a claim to the first house.

Argued April 2, 1895. Appeal No. 212, Jan. T., 1895, by plaintiff, from decree of C. P. No. 1, Phila. Co., June T., 1893, No. 927, dismissing bill in equity. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to decree conveyance of real estate. BRÉGY, J., filed the following opinion:

1. That the plaintiff is the daughter of Catharine Brown and Dr. Gustavus Richard Brown Horner.

2. That the defendants are the children of Dr. Horner.

3. That on the 18th of July, 1856 (the plaintiff being then two years of age), Dr. Horner executed the following papers:

"PHILADELPHIA, July 18th, 1856.

"Be it known unto all persons whom it may concern, that I have this day adopted as my lawful child Catharine Brown, Jr., minor, of this city, daughter of Miss Catharine Brown, formerly C. Brady, now residing therein, and that, including the value of the house and lot named in the above letter, I devise to her, well secured property amounting to eight thousand dollars, to be held in trust for (her) benefit by the Girard Life Insurance, Annuity and Trust Company, of Philadelphia, as directed in

my last will and testament of February 20th, 1855, and in the copy of it preserved by me.    The above inserted word (her) was made by myself, it having been omitted.

    [SEAL]                        " GUSTAVUS R. B. HORNER, M. D.
" Witnesses: JOHN BRADY,
                " WILLIAM CURRAN."

                    " PHILADELPHIA, July 18th, 1856.

" My Dear Child : Aware of the uncertainty of life and of the difficulty of having my wishes fulfilled after death, I think it necessary to inform you that the house and lot you and your mother now occupy were bought expressly by me for your use and benefit, to be held in trust by me for those purposes as long as desirable.    You will, therefore, please accept them as tokens of my affection, but with the understanding that in case of your decease previous to me they revert to me, unless you should leave issue, and that your mother will continue to reside on the premises as long as she may deem proper.    Should your issue die, as well as yourself, before your mother, then she shall enjoy the above property as long as she lives, and will it as she may deem fit to any other children she may have besides you. Should she die without direct heirs or issue, then the above property shall be inherited by her sister and brother, their heirs and assignees.

              " I am, very affectionately,
                      " Your father,
                " GUSTAVUS R. B. HORNER, M. D.
" To MISS CATHARINE BROWN, JR.,
          " No. 473 North Eleventh street.
              " Philadelphia, Penna."

    4. That the plaintiff is the Catharine Brown, Jr., mentioned therein.

    5. That the above instruments were written on the same sheet of paper and were delivered to the mother of the plaintiff, who held them till about fifteen years ago, when they were by her delivered to plaintiff, who has since held them.

    6. That the premises in question were known as 473 North Eleventh street, but now are known as 825 North Eleventh street.

    7. That no deed ever was made by Dr. Horner conveying the property to plaintiff.

8. That the defendants are receiving the rents of the premises 825 North Eleventh street, and that they claim title to same by virtue of the will of Dr. Horner.

9. That the said Dr. Gustavus Richard Brown Horner died at his home at Warrenton, in the state of Virginia, on the 8th day of August, 1892, leaving a will dated August 4, 1892, and proved at a county court in Fauquier county, Virginia, on the 22d day of August, 1892, of which will Alfred Byrne Horner and John Williams Belt are the duly appointed and qualified executors.

10. That on April 4, 1865, Dr. Horner (who had purchased, on May 30, 1864, the property on Twenty-first street), executed a declaration of trust as to that property in the following words:

" Now know ye that I, the said Gustavus R. B. Horner, do by these presents make known, admit and declare that I now hold, and will still continue to hold, the same in trust, nevertheless for the following uses, intents and purposes, that is to say, in trust to permit and suffer Catharine Brown, Sr., widow, and Catharine Brown, Jr., widow, her daughter, both of the said city, to occupy, manage, let, demise and take, receive and enjoy the rents, issues and profits of the premises above mentioned for and during the terms of their natural lives, they paying all taxes and charges on said premises and all necessary and proper repairs thereof, and from and immediately after the decease of the said Catharine Brown, Sr., and Catharine Brown, Jr., to hold the same premises in trust for any issue that the said Catharine Brown, Jr., may leave surviving, to whom the said premises shall be conveyed in fee on arriving at the age of twenty-one years, but in the event of the said Catharine Brown, Jr., dying without leaving issue, or leaving issue and such issue becoming extinct before arriving at the age of twenty-one years as aforesaid, then and in such case this trust shall cease, and the estate and premises hereby granted shall revert and vest in the said Gustavus R. B. Horner and his legal representatives.

" In witness whereof, I have hereunto set my hand and seal this fourth day of April, in the year of our Lord one thousand eight hundred and sixty-five.

" GUSTAVUS R. B. HORNER, M. D.

" Signed, sealed and delivered in the presence of us,

" C. B. ROBERTS,

" W. W. DOUGHERTY."

11. That on January 20, 1879, the plaintiff then being of full age, Dr. Horner executed a deed in fee of the Twenty-first street property to the plaintiff.

12. The plaintiff, on January 22, 1879, accepted said deed, and gave the following receipt:

" PHILADELPHIA, Pa., January 22, 1879.

" Received of Dr. G. R. B. Horner and Mary A. T. H., his wife, their deed to me for the house and lots 314 North Twenty-first street in full, thereby releasing them from all taxes, water rents, and other claims.

(Signed)          " CATHARINE B. GROOME.

" Witness: THOMAS J. GROOME,
          " MARY O'BRIEN."

13. That the Twenty-first street property has been occupied since June 30, 1864, by the plaintiff and her mother, pursuant to a lease of that date offered in evidence.

14. That the value of the Eleventh street property was $3,800, and that the value of the Twenty-first street property was $5,000.

15. That since 1866 Dr. Horner has had possession and enjoyment of the Eleventh street property to the time of his death, and there appears to have been no demand on him to account for the income of the property, until the filing of this bill after his death.

From the facts as stated, I am of the opinion that whatever may have been the effect of the papers dated July 18, 1856, the deed of the Twenty-first street property, with its accompanying occupancy, receipt, lapse of years, failure to claim rent of Eleventh street house, and so on, all indicate that Dr. Horner intended, and the plaintiff accepted, the Twenty-first street property as a substitution for any interest she may have had in the Eleventh street property.

This conclusion requires the decree dismissing the bill.

Bill dismissed.

*Error assigned* was above decree.

*Henry Budd*, for appellant.—Natural love and affection are a valid consideration for a deed to sustain the assumption of a trust relation.

The obligation to provide for an illegitimate child is fully recognized by the law and the tendency of the decisions is to put illegitimate children on the same plane as legitimate, so far as the question we are now considering is concerned : Beachcroft, v. Beachcroft, Madd. 437 ; Holt v. Sindrey, L. R. 7 Eq. 171 ; Bunn v. Winthrop, 1 Johns. Ch. 329; Beckford v. Beckford, Lofft. 490 ; Soar v. Foster, 4 K. & J. 152; Tucker v. Barrow, 2 Hen. & Mil. 515; Kilpin v. Kilpin, 1 M. & K. 520; Wilson v. Atkinson, 4 De G. J. & S. 455 ; Brown's Trust, L. R. 16 Eq. 239 ; Dorin v. Dorin, L. R. 17 Eq. 463 ; Occleston v. Fullalove, L. R. 9 Chan. 147.

Equity will not interfere to assist a volunteer who claims under an incomplete trust, yet where there is a trust completed either by the appointment of a third person as trustee or by the owner declaring himself a trustee the court will act upon the trust : Ex parte Pye, 18 Ves. 140.

The intention to make the owner a trustee is conclusive of the question of completeness : Searle v. Law, 15 Sim. 95; Richardson v. Richardson, L. R. 3 Eq. 693 ; Viney v. Abbott, 109 Mass. 300.

The form in which the trust is declared is not essential. A deed is not necessary : Crossman's App., 42 Pa. 147 ; Stapleton v. Stapleton, 14 Sim. 186 ; Wheatley v. Purr, 1 Keene, 551 ; Morgan v. Malleson, L. R. 10 Eq. 475.

The fact that a person constituting himself a trustee reserves to himself at the same time the control of the subject of the trust qua trustee, does not destroy the fiduciary nature of his holding : Bolton v. Bolton, 3 Swan, 414.

The testator had just, by the writing quoted in paragraph four, given to his daughter, the plaintiff, certain premises and declared himself a trustee thereof. He had previously by will left to the same person a bequest to the amount of some $8,000. If the plaintiff had been his legitimate child, the subsequent gift would have been an ademption pro tanto of the legacy, but as in the eye of the law an illegitimate child (in the absence of proof of recognition and of the fact that the testator stood in loco parentis) is a stranger, the rule that a gift to a stranger does not amount to an ademption would have applied, and the plaintiff in the absence of any explanation would have taken both the $8,000 and the premises in question, in other words a

double portion. See the rule as laid down by Lord ELDON in Ex parte Pye, 18 Ves. 140; and see Wetherby v. Dixon, 19 Ves. 412; Smith v. Cunningham, 9 Phila. 96; Story's Eq. sec. 1110; Miner v. Atherton's Exr., 35 Pa. 528.

The trust having been created and an equitable estate vested in the appellant, she has not done anything by which she has given up or waived her rights or estopped herself from asserting them.

Dr. Horner could not revoke the trust which he had declared by his writing of the year 1856. The authorities are clear that he could not: Fortescue v. Barnett, 3 M. & K. 36; Drosier v. Brereton, 15 Beav. 221; Dennison v. Goehring, 7 Pa. 175.

If the receipt is relied upon, the court's attention is invited to its phraseology. It includes the receipt of the deed and releases Dr. Horner from " taxes, water rents, and other claims." It will hardly be pretended that without the words " other claims " this receipt could in any way affect the case. How then must " other claims " be interpreted? The rule of law is well settled that where we have specific terms or expressions followed by a more general term or expression, the latter will be limited by the former and can only include things which are ejusdem generis with the former: Moore v. Magrath, 1 Cowp. 9; Clifford v. Arundell, 1 De G. F. & J. 305; Nesbitt v. Lushington, 4 T. R. 783; Harrison v. Blackburn, 17 C. B. N. S. 678; Johnson v. Ry. Co., 35 Beav. 480; Bucher v. Com., 103 Pa. 528.

*William C. Hannis*, for appellees.—It is essential to specific performance that the consideration should be valuable; a merely good consideration, such as natural love and affection, or the performance of a moral duty, will not be sufficient. Moreover it is necessary that the consideration shall be actual. A constructive consideration, such as that imported by the seal to a bond, will not do: Bispham's Principles of Equity, 346, 376.

The ordinary power of a chancellor extends no further than the execution of a trust sufficiently formed to put the legal title out of the grantor; or to the execution of an agreement for a trust founded on a valuable consideration: Read v. Robinson, 6 W. & S. 329.

Specific performance will not be decreed in favor of a party

who voluntarily gives up possession of property which he has claimed to hold under an equitable right: Merrill v. Merrill, 5 Kulp, 125.

Equity will not enforce the specific performance of an agreement, in the nature of a testamentary act, even though there be a valuable consideration for the agreement: Rowan's App., 25 Pa. 292; McCue v. Johnston, 25 Pa. 306; Stein v. North, 3 Yeates, 324.

Laches for six years, or under certain circumstances for a less period, will bar an effort to establish a constructive trust: Ashhurst's App., 60 Pa. 290; Evans's App., 81 Pa. 278; Wallace v. Duffield, 2 S. & R. 521; Pipher v. Lodge, 4 S. & R. 309; Harrison v. Brolaskey, 20 Pa. 299; Walker v. Walker, 16 S. & R. 378; Rush v. Barr, 1 Watts, 110; Clarke's Est., 1 Phila. 356.

The case of Fortescue v. Barnett, 3 M. & K. 36, is not in point because there was no allegation or proof there, as here, of the acceptance as in full of substitutionary provision, and of laches for more than fifteen years.

*Henry Budd*, for appellant, in reply.—Mrs. Groome was a married woman. It is claimed that she released or conveyed an interest in realty. This she could only do by a writing executed and acknowledged after a separate examination, and in which her husband joined: Graham v. Long, 65 Pa. 383; Glidden v. Strupler, 52 Pa. 400; Durham v. Wright, 13 Pa. 167; Kirk v. Clark, 59 Pa. 479; Klein v. Caldwell, 91 Pa. 140; D. L. &. W. R. R. v. Benson, 61 Pa. 369; Buchanan v. Hazzard, 95 Pa. 240; Innis v. Templeton, 95 Pa. 262; Davidson's App., 95 Pa. 394; Miller v. Ruble, 107 Pa. 395; Stivers v. Tucker, 126 Pa. 74.

OPINION BY MR. JUSTICE MITCHELL, October 7, 1895:

From the facts which are found by the learned judge below to be not really disputed, it appears that a voluntary settlement was made by Dr. Horner upon plaintiff in 1856. It is not necessary to discuss the question so fully argued by appellant, as to the sufficiency or the validity of the declaration of trust, for conceding those points, it still appears that the trust was subject to change, which might be either as to the subject-matter,

the Eleventh street house, or as to the terms of the trust itself. The trust, it will be observed was not in favor of the appellant alone, but of the appellant and her mother jointly, and it was expressly declared that the house should be held on the trust " as long as desirable." The mother was to continue to reside there " as long as she may deem proper." It therefore appears beyond question, by these and the other terms of the paper, that the trust was intended to be open to change and resettlement as circumstances might require. In the course of years there were changes of circumstances and the parties acted upon them. In May, 1864, Dr. Horner bought the more valuable house on Twenty-first street, and in June of the same year he rented it to Catharine Brown the mother, who for payment of the rent pledged the rent of the Eleventh street house, calling it " my house." In February, 1866, the mother again calling the Eleventh street house " my house " signed a paper agreeing to exchange it for the Twenty-first street house ; and by a paper dated April 4, 1865, but which clearly was made April 4, 1866, Dr. Horner declared a trust as to the latter house, which though not identical in terms with the trust of 1856 as to the other house, was practically equivalent to it, being in favor of appellant and her mother. In all of these transactions the mother, who was a cestui que trust in her own right and the natural guardian of her daughter, appears to have acted for the interests of both as if the property were, as she called it, her own. Of course the want of formality in the conveyancing, and the absence of any legal steps to pass the daughter's estate, prevented any of these dealings with the property from becoming a bar to appellant's claims, but the transactions are competent evidence to show the intention of Dr. Horner and the mother. They leave no doubt whatever that such intention was to substitute the new house for the old one, to be held on what the parties regarded as the same trusts within the latitude of resettlement contemplated in · the instrument of 1856, and to leave the first or Eleventh street house in the possession of Dr. Horner with the legal title which had continued in him, freed from the previous trust.

This arrangement as already said would have been ineffectual against the appellant's present claim. But in 1879 Dr. Horner conveyed the Twenty-first street house in fee to appel-

lant, who receipted for it " in full, thereby releasing them (the grantor and his wife) from all taxes, water rents, and other claims." The words " other claims " would ordinarily be read in connection with taxes and water rents to mean claims ejusdem generis, but a receipt "in full " from the donee to the donor of a free gift is in itself a somewhat extraordinary document, and has some significance in this case. The Eleventh street house had been in possession of Dr. Horner, and he had received the rents as his own, since the exchange in 1866. He continued to do so until his death in 1892, a period of twenty-six years, seventeen of which were after appellant had come of full age. In all this time no claim was made upon him for any part of the rents, for an account, or for the enforcement in any way of the trust now set up. The only rational explanation is that appellant acquiesced in the exchange of houses made by her mother for her, and accepted the conveyance in fee of the more valuable house in 1879, with full knowledge of the circumstances, and as a complete and final settlement of the whole trust. Parties who come into equity with such stale claims postponed not only for such a lapse of years, but until the death of the party sought to be charged, must understand that they will be held to the strictest proof of every step in the establishment of the asserted right. Appellant has utterly failed to meet this requirement. Her claim is without merit in law or in morals and the bill was properly dismissed.

Decree affirmed at the costs of the appellant.