## Schulz Estate.

460

Argued May 28, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

Appeal, No. 195,

reargument refused July 22, 1953.

*Charles E. Workman,* with him *Daniel H. Shertzer,* for appellant.

*Robert Ruppin,* with him *Joseph R. Byars,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, June 26, 1953:

The appeal is from an order of the Superior Court affirming a decree of the Orphans' Court of Lancaster County refusing to make an order on the register of wills authorizing the grant of letters of administration *de bonis non cum testamento annexo* after twenty-one years from the death of testator. See sec. 21 of the Act of March 15, 1832, P. L. 135 (reenacted sec. 302 Fiduciaries Act of 1949, P. L. 512, 20 PS 320.302).

Max Schulz, the testator, died May 30, 1917. He was possessed of a twenty-six acre farm and personal property estimated at $3,000. He was a widower survived by seven adult children. By his will the residuary estate, consisting of the above real and personal property, was devised and bequeathed to his executor with direction to convert the real estate into personalty within two years from his decease and to divide the fund into seven equal shares. He bequeathed an equal one seventh share to each of six named children. The remaining one seventh share (the subject of the present litigation) he directed to be retained by his executor *in trust* to "invest so much thereof as he may deem necessary" in the purchase of a home for the use of his son Frank and the son's wife Lena, and to invest the balance and to pay the net income to the son and wife for their successive lives. Upon the decease of the life tenants the testator further directed that the house should be sold, and the entire corpus of the trust equally divided among the children of such life tenants. Testator's son Edward was named as executor.

The record discloses that the executor filed neither an inventory nor an account and no home was ever purchased. Lena, the son's wife, predeceased her husband.

On March 24, 1920, six of *testator's* children including the son Frank, *the life tenant* of a one-seventh share, deeded their respective interests in the real estate, and released their interests in the personal estate to Edward Schulz who was the executor trustee of testator's estate. The deed and release were recorded. *The pivotal fact is that none of the children of Frank and Lena— five of the seven of whom were then minors—were joined, either in person or by guardian in such transfer and release.*

Despite the failure of such joinder of Frank's children, the deed *erroneously* recites: ". . . all of the parties hereto are all of the heirs and legal representatives of the said Maximillian Schulz, deceased, and are all of the parties who now have or hereafter might or could have any interest in the said real estate and by arrangement among all of the parties hereto it has been agreed to execute this conveyance so that the said Edwin J. Schulz the grantee herein shall have an absolute fee simple title in the premises free and discharged of all claims whatsoever which any of the parties hereto might or could have in the said real estate, or in any personal property belonging to the said decedent."

The consideration in the deed is named as One Dollar. The revenue stamps affixed, however, were in the amount of $12.00, indicating a consideration of $12,000. In respondent's answer under new matter, it is stated that: ". . . all the children of Maximillian Schulz, including his son Frank, who was entitled to the income for life of one-seventh (1/7) of the proceeds of the land, accepted the sum of Twelve Thousand ($12,000.00) Dollars *as the price of the land* and, intending that the

full legal title should be vested in Edward Schulz individually. . . ." (italics supplied)

It is also stated: ". . . that one-seventh (1/7) of the purchase price should be held in trust for Frank Schulz and his children for the purposes specified in the Will of Maximillian Schulz, . . ."

The answer further stated: ". . . that Edward Schulz, the trustee, with the knowledge and consent of all the said children of Maximillian Schulz sold the one-seventh (1/7) interest which he held as trustee to himself and held, occupied, used and dealt with the land as his own, free of the said trust, from the time of said conveyance, treating the one-seventh (1/7) interest as being vested in him, together with the remaining six sevenths (6/7) interest, by the family settlement and the deed; . . ."

Under such circumstances respondents contend that the deed and release by the seven children of testator (the son Frank possessing as stated but a life estate and without the joinder of his children, the remaindermen) were equivalent to and thereby constituted a conveyance of the entire title by the *trustee* to himself as an *individual* and hence was a conversion of the real estate into personalty; that thereafter the executor trustee held this one-seventh share of $12,000 in trust for Frank for life with remainder to *Frank's* seven children. It is further contended such *"sale"* was merely voidable; also that since the sale was with full knowledge and acquiescence of *testator's* children the petitioner grandchildren (children of the son Frank) are barred by laches and the statute of limitations.

On February 24, 1921, John Schulz, a son of testator, petitioned the orphans' court for a citation upon the executor to file an account. On May 15, 1922, the court dismissed the petition on the ground that *"the*

*estate has been settled, and it was done agreeably to all parties."* (italics supplied)

On May 13, 1938, the trustee filed a triennial account as "testamentary trustee for Frank Schulz." This triennial account, filed for information only, was neither advertised nor audited. See Fiduciaries Act of 1917, June 7, P. L. 447, sec. 46 (h), 20 PS 838. The answer, however, concedes that the trustee was then holding such one-seventh share in trust and was paying the income therefrom to Frank, the life tenant.

On January 6, 1941, Edward Schulz, the trustee, died. His widow was appointed his administratrix. Frank, testator's son and life tenant of one-seventh share, died August 5, 1943, intestate. He left the said seven children surviving and no issue of deceased children.

On July 6, 1951, Elvin T. Schulz, one of the seven children of *Frank Schulz, the life tenant,* petitioned the orphans' court for a citation on all parties to show cause why the register of wills should not grant letters *de bonis non cum testamento annexo* in the estate of testator after twenty-one years in accordance with the Act of 1832, supra. An answer was filed to the amended petition.

On August 8, 1951, the administratrix of Edward J. Schulz, the testamentary trustee of Frank Schulz under the will of Max Schulz, deceased, filed an account of the administration of the trust by the fiduciary which has not been audited.

On February 13, 1952, the orphans' court denied the petition. In its opinion the court decided that because of laches and family agreement or settlement, petitioner was estopped from requiring the appointment of an administrator *d.b.n.c.t.a.* The petitioner appealed to the Superior Court. That court affirmed the decree of the court below. This Court allowed an allocatur.

We are unable to agree with the decree of the orphans' court so affirmed by the Superior Court. That a trust still subsists concerning the one-seventh share in controversy is conceded. The dispute is whether or not the action of the fiduciary in acquiring, by deed and assignment, the individual interests of his *five* brothers and sisters, and by the deed and assignment to him by his brother Frank, *the life tenant,* the remaining seventh share, constituted a sale of the real estate, and therefore a conversion of the realty into personalty. As stated, the court below and the Superior Court decided that it did; and that the *remaindermen* in the trust were thereafter interested only in the *fund* which the fiduciary set up as the trust *res.*

While all the six adult children of *testator* assigned *their* respective interests to Edward (the executor trustee) the interest of *Frank* was only that of *life tenant* in a seventh share. At the date of such transfer; viz., March 24, 1920, *five* of the seven children of the life tenant, the remaindermen, were minors who had no guardians. They respectively attained their majorities as follows: Mary on September 14, 1921; Marjorie on May 30, 1923; Ella on May 27, 1924; Elvin on December 12, 1927 and Dorothy on March 2, 1930. Bertha reached her majority on April 6, 1918 and Edwin on January 4, 1920, and they were therefore adults when their father, the life tenant, executed the deed and release. But a *parent* has no authority to sell and convey the interest of a *minor child* in real or personal property: *Senser v. Bower,* 1 Penrose & Watts 450; *Heft & Hix v. McGill,* 3 Pa. 256, 263; *Groome v. Belt,* 171 Pa. 74, 32 A. 1132; *Fassitt v. Seip,* 249 Pa. 576, 95 A. 273. No citation is necessary to establish that a parent, or any other person without authority, may not validly convey and transfer the interest of an *adult* child in his real or personal property.

Furthermore, even under appellee's theory (which has no basis under the present facts) it is also a well established rule that a fiduciary may not purchase trust property at his own sale: *Tanner's Estate,* 218 Pa. 361, 67 A. 646; *Noonan Estate,* 361 Pa. 26, 63 A. 2d 80; *Matheny Estate,* 164 Pa. Superior Ct. 18, 24, 63 A. 2d 477. True, such a sale may be voidable and not void: *Church v. Winton,* 196 Pa. 107, 46 A. 363; *Herbert v. Northern Trust Co.,* 269 Pa. 306, 112 A. 471; *Hadesty v. Hadesty,* 331 Pa. 81, 200 A. 6. But there must be a *sale.* No application was made to the orphans' court by this trustee for leave to purchase and there is no evidence establishing any equity requiring us to hold that such a transaction constitutes a valid *sale* which would foreclose these grandchildren from receiving their respective distributive shares of the trust property.

Upon the application of one of *testator's* children (who had transferred his interest to his brother, the trustee), the orphans' court on May 15, 1922, refused to direct the trustee to account because of what is termed a "family settlement." But the *children of Frank,* the life tenant, were not made parties to this proceeding. At that date four of the seven of Frank's children were still minors. Consequently such decree of the orphans' court is not *res judicata* as to any of these children. To constitute *res judicata* "the present parties [must have] an opportunity to appear and assert their rights": *Hochman v. Mortgage Finance Corporation,* 289 Pa. 260, 263, 137 A. 252; *Wallace's Estate,* 316 Pa. 148, 174 A. 397, and cases therein cited.

Edward, the executor trustee, died January 6, 1941. No successor or administrator *d.b.n.c.t.a.* has ever been appointed in Max Schulz's estate. Frank, the life tenant, died August 5, 1943, leaving surviving no widow but *his* seven children above named, all of whom were *by that time* (1943) adults.

In *Lloyd's Estate,* 281 Pa. 379, 126 A. 806, we said, speaking through Justice SADLER, p. 386: "During the continuance of the life estate, one holding in remainder is not bound to notice possession taken and continued by virtue of a conveyance from the life tenant: Stahl v. Buffalo R. & P. Ry. Co., 262 Pa. 493; Gernet v. Lynn, 31 Pa. 94."

But there was no *sale* by the fiduciary. All that Edward Schulz acquired by the deed and release was the respective *individual* shares of his brothers and sisters. While his brother Frank, possessing but a life estate in a one-seventh share, signed the deed and release, curiously enough it is not claimed that Frank *transferred* anything to Edward. *It is conceded that a trust was erected for the benefit of Frank and his children* for the one-seventh share. It is therefore claimed, but without merit, that the life tenant's deed and release transferred his own share and that of his children in the trust to the fiduciary absolutely and in his individual right.

Unless these remaindermen are estopped by laches or have otherwise divested themselves of title (which the record discloses they have not), their interests remain as they existed at testator's death.

The existence of the trust being conceded, a *cestui que trust* does not lose or forfeit his interest in the trust *res* merely because of delay in asserting his ownership. Thus where a life tenant did not take interest during her lifetime, her executrix was not estopped from receiving it after her death: *Martin's Estate,* 280 Pa. 573, 124 A. 738. See also: *Marshall's Estate,* 278 Pa. 206, 122 A. 289; *Yate's Estate,* 281 Pa. 178, 126 A. 254; *Mallory's Estate,* 285 Pa. 186, 131 A. 714; *Daily's Estate,* 323 Pa. 42, 186 A. 754; *Bard's Estate,* 339 Pa. 433, 13 A. 2d 711. Scott on Trusts, sec. 219.1, states: "A beneficiary does not lose his interest in the trust

property merely because of a lapse of time, however great; the mere failure of the trustee to perform the trust and the failure of the beneficiary to compel him to perform it do not terminate the trust by extinguishing the interest of the beneficiary."

Professor Scott, in a footnote, cites among many authorities in support of the text *Norris's Appeal*, 71 Pa. 106; *Buchner v. Buchner*, 114 Pa. Superior Ct. 503, 174 A. 643.

The present situation is not one in which there is an alleged *breach* of trust and a surcharge is claimed, where the laches of the beneficiary may prejudice the trustee, or his estate, in defending: see Restatement, Trusts, sec. 219, comment a; *Hartmann's Estate*, 38 D. & C. 310, LADNER, J., auditing judge (later Justice of this Court). In the case now before us there was no *breach* charged. The interests of these beneficiaries have never been divested and have not been paid to them, even though such interests remained unclaimed for eight years after the death of the life tenant.

There remains the *procedure* by which the remaindermen may receive distribution. *As there was no sale and conversion* of the real estate by the executor trustee, no basis exists for a *surcharge* against such fiduciary to secure the shares of the remaindermen beneficiaries. However, the account of the administratrix of the trustee, which has been filed, necessarily should be audited.

The remaindermen are relegated to the will of testator to secure their shares in the unconverted real estate. *The personal representative of the deceased executor trustee has no authority to act as the fiduciary of the original testator*: Fiduciaries Act of 1917, P. L. 447, sec. 3 (b), 20 PS 350, which reads: "(b) Whenever a sole executor, or the survivor of several executors, shall die, leaving goods or estate of his testator

unadministered, the register having jurisdiction shall, notwithstanding such executor may have made his last will and testament, and appointed an executor or executors thereof, grant letters of administration of all such goods and estate, in the same manner as if such executor had died without having made any testament or last will; and the executor of such deceased executor shall in no case be deemed executor of the first testator."

The Commissioners' note to this section states: "Note.—This is Section 19 of the Act of March 15, 1832, P. L. 135, 1 Purd. 1074, which corresponded to Section 18 of the Commissioners' Draft.

"By the common law, the trust of the sole executor might be transmitted to his executor, and the same was true as to the survivor of several executors. The Act of March 12, 1800, 3 Sm. L. 433, Section 3, enabled administrators with the will annexed to execute the powers conferred upon executors by will in relation to lands. The Commissioners remarked: 'This act having thus provided for the cases in which the powers of the executor of an executor are most important, it is proposed by this section to abolish his powers altogether. . . . We will only add that convenience in the administration of the two estates and the security of creditors and others interested in different rights recommend the adoption of the section under consideration.' "

It necessarily follows that an administrator *d.b.n.c.t.a.* must be appointed to execute the provisions of the testamentary directions of Max A. Schulz, the testator. The parties now in interest may, however, elect to take the land instead of money: *Bailey v. Allegheny National Bank,* 104 Pa. 425; *Lincoln v. Wakefield,* 237 Pa. 97, 85 A. 133. In such event a partition might be required. If no such agreement is entered into by *all interested parties,* an administrator *d.b.n.c.t.a.*

will be required to sell and convert the real estate as testator directed: Fiduciaries Act of 1917, June 7, P. L. 447, sec. 3 (b), 20 PS 350 et seq. The power of sale is in such administrator *d.b.n.c.t.a.* *virtute officii*: *Evans v. Chew,* 71 Pa. 47; *Lantz v. Boyer,* 81 Pa. 325; *Potts v. Breneman,* 182 Pa. 295, 37 A. 1002; *Nagle v. Fleming,* 303 Pa. 263, 154 A. 718; *Kemerer v. Johnstone,* 318 Pa. 526, 179 A. 67. A *substituted trustee* need not now be appointed since the life tenant is deceased and no trust duties will devolve upon a trustee. The administrator must make the sale and distribute the fund: cf., *Ross v. Barclay,* 18 Pa. 179; *Gehr v. McDowell,* 206 Pa. 100, 55 A. 851; *Strite v. Wolf,* 268 Pa. 221, 110 A. 753.

The decree of the Superior Court and that of the Orphans' Court are reversed, and it is ordered that the Orphans' Court grant the prayer of appellant's petition. Costs to be paid out of the estate.