**Perry et al. v. Petillo et vir**

256

*H. Rubin,* for complainants.
*Bucci & Bucci,* for respondents.

SLOANE, J., June 10, 1949.—A bill, an answer containing new matter, and an answer to the new matter, were filed in this case. There is little disagreement on facts, and the material averments of the pleadings of both sides may be summarized thus:

The parties are the three children of one Ersillia de Marco, who died May 17, 1940, and the spouses of two of them. Plaintiffs are Mary Perry, daughter of decedent, her husband, Peter, and John Petillo, a son of decedent. Defendants are Frank Petillo, a son, and his wife, Mary.

At the time of her death, Ersillia de Marco was the owner of the two adjoining properties, 7160 and 7162 Torresdale Avenue, Philadelphia, with certain garages attached to the properties. By her will she devised 7160 to her daughter Mary Perry in fee. She gave a life estate in 7162 to her son Frank Petillo (subject to the condition that the premises should not be used for a beauty parlor), and the remainder in fee to her daughter, Mary Perry, and another son, plaintiff John Petillo, in equal shares. Should Mary Perry fail to survive the life tenant the share devised to her goes instead to her children, in equal shares. Should John Petillo fail to survive the life tenant, the share devised to him goes to Mary Perry, if living, and if not, to her children.

On February 3, 1937, Ersillia de Marco created a blanket mortgage covering the two properties, to Tradesmens National Bank and Trust Company, trustee, as mortgagee, in the principal sum of $6,000. The interest rate was six percent and semi-annual payments of $150 each were required in reduction of principal; the maturity date for the payment of the balance of principal was February 3, 1942. In her will Mrs. de Marco made the following provision concerning this mortgage:

"ITEM 10. There is a blanket mortgage now secured upon all of my aforementioned real estate, the principal amount of which I am reducing from time to time. I hereby direct that the unpaid balance of the said mortgage debt or principal sum as of the date of my decease shall be deemed and considered to be a debt or lien against my real estate in the following manner; one-third (⅓) thereof shall apply against premises 7160 Torresdale Avenue and the double garage on Wellington Street, and two-thirds (⅔) thereof shall apply against premises 7162 Torresdale Avenue and the four single garages on Wellington Street; *and therefore two-thirds (⅔) of the interest with respect to the said mortgage debt or principal sum, as of the date of my decease and thereafter, shall be chargeable against and paid by my said beloved son, FRANK PETILLO, in connection with the life estate heretofore bequeathed unto him pertaining to said premises 7162 Torresdale Avenue and the said four single garages.*" (Italics supplied.)

On October 9, 1940, the mortgage created by decedent-testatrix being in default, an extension agreement was entered into between the mortgagee, Tradesmens National Bank and Trust Company, trustee, on the one side, and Mary Perry, her husband, Peter, and Frank Petillo, on the other side. In the agreement Mary and Peter Perry and Frank Petillo personally

assumed responsibility for payment of interest and principal of the mortgage which had by then been reduced to $4,275. They were to pay the interest and continue reducing principal by $150 semi-annually, with the entire balance of principal falling due February 3, 1942. There was no apportionment of lien or liability as to the bank-mortgagee, or as between the parties themselves, in the extension agreement.

From the time of the extension agreement to September 5, 1944, Frank Petillo and Mary Perry paid the installments on account of interest and reduction of principal in the proportion of two thirds by Frank Petillo and one third by Mary Perry. On September 5, 1944, an assignment of the mortgage was made from Tradesmens as mortgagee to defendant Mary Petillo, wife of Frank, as assignee, on payment of the balance then due, $3,075. There is a difference in averment between the parties as to who actually supplied the money to pay off the mortgage. Plaintiffs state that Frank Petillo paid and took an assignment to his appointee, Mary Petillo; defendants say Mary Petillo bought the mortgage with her own money.

Defendants did not inform plaintiffs of the assignment and Mary Perry continued to make semi-annual payments on account of her share of interest and principal reduction as before. She gave them to Frank Petillo under the impression that he was adding his own share and turning them over to the original mortgagee. Upon learning of the assignment to Mary Petillo, plaintiff Mary Perry, on April 2, 1948, made a tender of the principal due on her one-third share, $516.38, as well as the interest thereon to that date, $20.66, and in return demanded that the entire mortgage be satisfied of record or assigned to her, which defendants refused to do.

Plaintiffs say they fear a collusive foreclosure by defendants without notice to them, for the purpose

of wiping out their remainder interests in 7162 Tor-
resdale Avenue.

Plaintiffs ask for relief as follows: (1) That upon
payment of the one-third share of principal and in-
terest due upon the mortgage by Mary Perry to as-
signee-defendant Mary Petillo, the mortgage be
satisfied of record or assigned to Mary Perry or her
appointee; (2) that the obligation of Mary Perry to
pay interest as to her share shall cease as of April 2,
1948, when she made her tender to pay off the remain-
ing one third of principal with the interest thereon to
that date, and (3) general relief.

Defendants aver that the mortgage was purchased
by Mary Petillo with her own money as an investment;
further that the extension agreement had expired and
the mortgage had reached maturity so that it was
subject to call at any time and that plaintiffs did noth-
ing about helping to pay it off. Defendants deny they
have any intention of foreclosing without notice to
plaintiffs, and aver they are ready and willing to ac-
cept whatever money is due them. Defendants do not
ask dismissal of the bill but an equitable adjustment
of the proper sums due.

Defendants add new matter to their answer, raising
some collateral disputes as to the use made of the two
properties, but agreement as to these matters was
reached by the parties at the trial, and disposition of
them by the court is not required.

### Findings of Fact

1. Ersillia de Marco died May 17, 1940, leaving
to survive her three children, Mary Perry, John Petillo
and Frank Petillo. Mary Perry is married to Peter
Perry, and Frank Petillo to Mary Petillo. Mary Perry,
Peter Perry and John Petillo are plaintiffs in this case;
Frank Petillo and Mary Petillo are defendants.

2. At the time of her death Ersillia de Marco was sole owner of premises 7160 and 7162 Torresdale Avenue, Philadelphia.

3. On February 3, 1937, Ersillia de Marco created a blanket mortgage covering both properties, to Tradesmens National Bank and Trust Company, trustee, mortgagee, in the principal sum of $6,000, at six percent interest, principal to be reduced semi-annually by $150, and the balance to become due five years after date of execution.

4 (a) By her will, dated March 8, 1940, and duly probated after her death, Ersillia de Marco devised an absolute fee in 7160 Torresdale Avenue to her daughter Mary Perry, and a life estate in 7162 Torresdale Avenue to her son, Frank Petillo, with remainder in fee to her daughter, Mary Perry, and another son, John Petillo, in equal shares.

(b) The will provided that if Mary Perry predeceased testatrix or failed to survive the life tenant, Frank Petillo, then her lawfully begotten children, their heirs and assigns, take her share, equally.

(c) Should John Petillo predecease testatrix or fail to survive Frank Petillo, his share goes to Mary Perry, if living, and if not, to the lawfully begotten children of Mary Perry.

(d) The will provided that the life tenant, Frank Petillo, keep premises 7162 Torresdale Avenue in repair, pay the taxes and water rents and other municipal and governmental charges during the continuance of the life estate, and neither use, or cause to be used, the premises as a beauty parlor.

(e) In item 10 of her will Ersillia de Marco provided that one third of the mortgage debt against the two properties be a lien against 7160 Torresdale Avenue, and two thirds against 7162, and that two thirds of the interest be chargeable against Frank Petillo

in connection with his life estate in 7162 Torresdale Avenue.

5. At the time of Ersillia de Marco's death, John Petillo was 50 years old, Frank Petillo 40, and Mary Perry 31.

6. After the death of testatrix, Frank Petillo entered upon the occupancy and enjoyment of the life estate devised to him.

7 (a) On October 9, 1940, the aforementioned blanket mortgage being in default, an extension agreement was entered into between Tradesmens National Bank and Trust Company, trustee, mortgagee, and Mary and Peter Perry and Frank Petillo, under the terms of which Mary and Peter Perry and Frank Petillo all assumed the obligation of the entire principal (then reduced to $4,275), with the other terms remaining as before, six percent interest, $150 semi-annual reduction of principal, and with the balance of principal due as previously, at the expiration of five years from the original date of the mortgage.

(b) No agreement was made between the parties at the time of the execution of the extension agreement, or thereafter, with respect to any change in the apportionment of lien or liability between them as to the respective properties.

8. After the execution of the extension agreement, Mary Perry and Frank Petillo made the payments on the mortgage, of both interest and principal reduction, in the proportion of one third by Mary Perry and two thirds by Frank Petillo, until September 5, 1944. Mary Perry turned over her payments to Frank Petillo, who added his own portion, and paid it to the mortgagee.

9 (a) On September 5, 1944, the mortgage, then reduced to the principal sum of $3,075, was purchased from Tradesmens National Bank and Trust Company, trustee, mortgagee, for that sum, the purchase being

made by or on behalf of Frank Petillo, though assignment was taken in the name of his appointee, his wife, Mary Petillo.

(b) Mary Petillo took the assignment with knowledge of all the facts and circumstances pertaining to the interests of the various parties in the properties here involved.

10. Neither Mary Perry nor John Petillo was ever given or received notice of the assignment of September 5, 1944. Mary Perry learned of it by accident late in 1947.

11. Mary Perry continued to make payments to Frank Petillo on account of her one third liability for interest and principal reduction on the mortgage, from the date of the assignment, September 5, 1944, until her discovery that the mortgage had been assigned to Mary Petillo.

12. Frank Petillo retained the payments received from Mary Perry subsequent to the assignment. No payments on account of either interest or principal were made by Frank Petillo to anyone after the assignment of the mortgage.

13 (a) Upon learning of the assignment to Mary Petillo, Mary Perry ceased making her payments on account, and on April 2, 1948, she made a tender to Mary Petillo of the sum of $516.38, as being the one third of principal of the mortgage then remaining on her share, together with accrued interest thereon of $20.66, and demanded that in return therefor Mary Petillo cause the entire mortgage to be satisfied of record or assigned to her.

(b) The said tender was refused by Mary Petillo, defendants offering to release the lien of the mortgage only as to Mary Perry's property, 7160 Torresdale Avenue, in return for the proffered payment, but refusing to satisfy or assign the mortgage in its entirety.

14 (a) Two thirds of the principal sum of the mortgage, which the will stipulated as a lien against 7162 Torresdale Avenue, has remained at the figure of $2,050 from the time of the purchase of the mortgage on September 5, 1944, for $3,075, since no payments have been made in reduction of it.

(b) The remaining one third of principal sum of the mortgage, which is a lien against 7160 Torresdale Avenue, is $536.38, to which sum it has been reduced by payments by Mary Perry.

(c) The sum of $50 is due from Mary Perry to Frank Petillo in adjustment of an erroneous tax assessment against 7162 Torresdale Avenue which should have been against 7160.

## Discussion

The problem here is to apportion the respective liabilities of the parties as to the blanket mortgage covering the two properties, 7160-62 Torresdale Avenue, which mortgage was purchased for $3,075 on September 5, 1944, by Frank Petillo, the life tenant of 7162 Torresdale. The assignment of the mortgage was taken in the name of Mary Petillo, wife of the life tenant, but I do not accept the story that she purchased it with her own money without knowledge of her husband. In my disposition of the case I treat the mortgage as having been paid off by or for him, an assignment thereof being taken in his wife's name as his nominee or appointee.

First, there is no question that while the mortgage was held by Tradesmens, as between the parties Mary Perry was liable for one third of the interest and Frank Petillo for two thirds of the interest, as provided in their mother's will. In addition, Mary Perry was liable for one third share of the required reduction or amortization of principal, because of the fee in 7160 Torresdale devised to her, and this she paid along with her

share of the interest. Under the will of his mother Frank Petillo was not liable to pay two thirds of the installments of principal reductions, and ordinarily a life tenant need pay only the interest on incumbrances. See Stroud, Exec., v. McDowell et al., 118 Pa. Superior Ct. 318; Kramer's Estate, 59 D. & C. 329, 337 and 341-3. Comment hh to section 129 of A. L. I. Restatement of the Law of Property, in the 1948 supplement, states the rule that a life tenant does not have the duty of making amortization payments on a mortgage. Frank Petillo, the life tenant here, did in fact pay a two thirds share of the reduction of principal installments up to September 1944, and no claim for a lien as to these payments is being made for him. As to these payments, therefore, he may be treated as a volunteer. Cf. Boggs v. Boggs et al., 63 Cal. App.(2d) 576, 147 P.(2d) 116, where a life tenant who paid the whole mortgage principal in monthly installments was declared entitled to contribution from the remaindermen. See also: In re Lanigan's Will, 21 N. Y. S. (2d) 550. Frank Petillo's payments on account of principal amounted to two thirds of $150 semiannually, and since the evidence showed that the property in which he has the life estate is an income-producing one, seemingly it was no great burden upon him. But the case is different as to the balance of principal when it became due. The mortgage was for five years, in the amount of $6,000, at six percent interest, with amortization at the rate of $150 semianually. It is clear that at the time it was to become due, February 3, 1942, a large proportion of the principal would still be unpaid (decedent must have known this), and no reason appears, either in law or in the particular circumstances of this case, why the life tenant should have to bear two thirds of this remaining principal, or any portion of it at all. Such a payment would obviously be for the benefit of the

remainder interests, and the life tenant should not be required to make it for them. The situation and also the will call for application of the usual rule, that the life tenant is liable for the interest only on an encumbrance. See Stark v. Byers, 213 Pa. 101, 102, affirmed on auditor's report and the opinion of the court below: A. L. I. Restatement of the Law of Property §129.

The fact that the life tenant assumed personal liability on the bond accompanying the mortgage, at the time the extension agreement was entered into, did not change the situation as between the parties for admittedly no new understanding as to their respective liabilities was made. As between the parties, the life tenant no more made himself responsible for the shares the remaindermen should pay than Mary Perry and her husband did as to interest chargeable to the life tenant, for they also undertook the entire obligation of the bond, as to the mortgagee. The fact that Mary Perry's husband, who had no interest in either property, was included in the extension agreement confirms this view. Since the mortgage was in default, the mortgagee no doubt set the terms. The parties all realized they had their individual interests to protect, and joined in the extension agreement in order to do so. The liability as to the mortgagee was different from the respective liabilities among the parties themselves. These respective liabilities must be determined as if no change therein had been brought about by the extension agreement.

Plaintiffs' further argument that Frank Petillo made himself liable for two thirds of the entire principal of the mortgage by his conduct in paying two thirds of the relatively small amortization payments is not valid. It might have more weight if the entire principal of the mortgage would have fallen due at the same rate (cf. however, Boggs v. Boggs et al., supra, where a life tenant who amortized a mortgage

by monthly payments was allowed to recover for them), but here three quarters of the entire principal became due at one time at the end of the five-year maturity period. Testatrix's will did not put the burden of redemption of the mortgage principal on the life tenant. His conduct cannot be said to have done so, either before or by the extension agreement. Morio v. Morio, 40 L. I. 24, relied upon by plaintiffs, is a different situation. There the reversioner and life tenant entered into an original mortgage under circumstances showing a gift of a share of the liability from the reversioner to the life tenant. Here no gift was made by virtue of the extension agreement, nor by previous conduct except possibly as to past payments by the life tenant.

Up to September 5, 1944, the mortgage, though already past maturity, was being paid as before, interest at the rate of six percent and $150 semi-annually in reduction of principal, and all paid in the proportion of one third by Mary Perry and two thirds by Frank Petillo. At September 5, 1944, the balance of principal due was $3,075. This was paid off to the then holder by or on behalf of Frank Petillo, and an assignment of the mortgage was made to Mary Petillo, his wife. The testimony that the payment was by Mary Petillo, with money obtained from her family and that Frank Petillo knew nothing about it is unconvincing. But the life tenant, Frank Petillo, had a right to pay off the mortgage because it was overdue, in order to save his estate, and no intent to make a gift to the remainder interests can be inferred from such a payment. He cannot pay off part only; he is compelled to redeem the whole mortgage. See Pomeroy, Equity Jurisprudence, vol. 4, sec. 1220. A tenant for life who pays off a charge against the estate is prima facie a creditor, and the burden of proof is on those who

assert that in paying off the charge the life tenant intended to exonerate the estate. See Marshall's Estate, 278 Pa. 206, 209-210. Plaintiffs here failed to estab-. lish any such intention on the part of the life tenant. On the contrary, everything points to the fact that in redeeming the mortgage he did not intend to pay the remaindermen's share for them. Cf. In re Wandel Estate, 16 Phila. 230.

The effect of the purchase of the incumbrance by the life tenant is to stop the running of interest on it as to himself while he is the holder: Mendenhall, Admrx., v. Jackson, Admr., et al., 268 Pa. 123. Where the husband of a life tenant purchased a mortgage on the estate, it was likewise held that interest stops during his ownership thereof: Pennock v. Imbrie, 3 Phila. 140. Here the assignment of the mortgage to Mary Petillo has not prejudiced plaintiffs, as they assert; they cannot be held for any greater proportion of the mortgage liability than they otherwise would have been, and no collusive foreclosure without notice to them, which they say they fear, can take place. There can be no foreclosure for failure of Frank Petillo to pay interest, since that has ceased to run. And since a life tenant who pays off a mortgage in its entirety is considered as doing it for the joint benefit of himself and the remaindermen, he cannot foreclose the entire mortgage; his right is limited to proper contribution from the others according to their interests. See Coughlin v. Kennedy et al., 132 N. J. Eq. 383, 28 A. (2d) 417.

As to 7160 Torresdale Avenue, which Mary Perry owns in fee, the purchase of the mortgage by Mary Petillo does not change Mary Perry's liability to pay her one-third share of interest and principal with respect to that property. A foreclosure against 7160 Torresdale could have been carried out by the original

mortgagee, and Mary Perry would have had to pay the entire balance of principal in order to save that property, but she would retain her rights against the life tenant and coremainderman of 7162 for their appropriate contributions. Her position has not been worsened in any way by the assignment.

Equitable adjustment of such sums as may be due between the parties, in apportionment of the mortgage liability, is really the purpose of this litigation. Plaintiffs' counsel request this in their brief, and defendants in their pleading. When Mary Perry learned of the assignment to Mary Petillo she made a tender of the one third of remaining principal balance and accrued interest on that one third, which applied to 7160 Torresdale Avenue, and in return asked for satisfaction of the mortgage in its entirety or its assignment to her or her nominee. As the above discussion shows, she was not entitled to that full satisfaction. She still has a certain obligation as to the other two thirds of principal, as one of the remaindermen of 7162. For the payment tendered she is entitled to a release of the lien of the mortgage as to the property owned by her in fee, 7160 Torresdale, and defendants have agreed to give such a release. Since Mary Perry was not entitled to the full return which she requested for her tender, interest payments as to her one-third portion should not cease as of April 2, 1948, when the tender was made. Mary Perry claimed that the balance of principal on her one-third share was $516.38 as of August 3, 1947, the date of her last payment to Frank Petillo on account of the mortgage. At trial this was somewhat revised; the amount of one of her payments which was in dispute was compromised, and an erroneous assessment of tax against the life tenant's property which should have been against the other was adjusted. The new figures have been agreed upon by

counsel, $536.38 as to the one-third share of principal,[1] and $50 for taxes. Should Mary Perry pay this agreed principal figure, with interest upon it to the date of payment, she will be entitled to a release of the lien of the mortgage against her property, 7160 Torresdale Avenue.

If this be done, this question remains: What apportionment should be made as to the remaining two thirds of the principal sum of the mortgage, which the will stipulated as a lien against 7162 Torresdale Avenue only? The amount of principal of the mortgage applying to 7162 Torresdale is $2,050, two thirds of $3,075, to which the entire mortgage had been reduced and for which figure it was purchased by or on behalf of the life tenant on September 5, 1944. The $1,025 applying to 7160 Torresdale at that time has been partially reduced by payments made by Mary Perry between the date of the assignment and the time she learned of it, and the further payment by Mary Perry of the agreed amount would clear this portion up entirely. The $2,050 has not been reduced by payments by Frank Petillo nor was he required to reduce it. His duty was to keep it from increasing, for a life tenant is bound to keep down incumbrances on real estate. This he has done because interest as to this portion of the mortgage has ceased to run since his payment of the principal.

However, the principal amount, $2,050, has the effect of a continuing incumbrance on 7162 Torresdale. The remaindermen are liable to take their estate subject to it but only as of the time their estate comes into being, the end of the life estate. Therefore, for the

---

[1] The figures are not quite in line with the proportions mentioned in the will because Mary Perry paid uniform amounts (usually $90) instead of the varying amounts which would constitute one third of interest and principal on the mortgage. The payments made have reduced Mary Perry's share of principal at a greater rate than the one third required.

holders of the future interest to pay off the incumbrance would not require $2,050 now, but the lesser sum equivalent to $2,050 as of the end of the life estate. To arrive at that sum requires a calculation taking into account the life expectancy of the life tenant and the appropriate rate of interest (here six percent, since this is both the legal rate and the rate provided in the mortgage).

The will is silent as to the effect of the maturity date of the mortgage on the respective liabilities of the parties. But the statement in the will that two thirds of the interest be paid by Frank Petillo, without mention of the maturity date, and the fact that Frank paid interest past that point is indication that the remaindermen are liable for principal only as of the end of the life estate and not maturity date. If there had never been default on the mortgage, and the remaindermen had paid off the principal in full at maturity, they would be entitled to a proportionate reimbursement from the life tenant for relieving him of any future interest payments. See A. L. I. Restatement of the Law of Property, §132(c). The case might be different where the principal is to be paid from the corpus of a trust estate without diminishing the remainder interests (see Kramer's Estate, 59 D. & C. 329), but not where the remaindermen themselves are the ones who make the payment.

Section 132 of A. L. I. Restatement of the Law of Property sets forth an equitable guide for apportionment where a due incumbrance is paid by the remaindermen, or by the life tenant. (The Pennsylvania Annotations for that section report no cases found). This section states that where an incumbrance becomes due and payable and the owner of a future interest pays it, under circumstances causing such payment not to be officious, then the owner of the estate for life has a liability in favor of the owner of such future

interest to have his estate subjected to a lien for his proportionate part of the sum so paid. So here, if the owners of the future interests paid the full amount of the incumbrance they would have a right against the life tenant, to be measured in terms of interest payable by the life tenant during the probable duration of the life tenancy. See Comment e. Comment f. to section 132 covers the payment of the whole incumbrance by the owner of the estate for life, which is the situation here. In this comment it is said that in the event of such payment by the life tenant he may not impress a lien on the future estate for the whole amount paid, but only for that part for which he himself would not be liable if the payment were made by the holder of the future interest.

Thus, in this case (after disposition of the one third of the mortgage applying to 7160 Torresdale by appropriate payment by Mary Perry), for the remaindermen to pay off the lien applying to 7162 requires such present sum as is equivalent to $2,050 at the end of the life estate, and this required sum is based upon the life expectancy of the life tenant and the interest rate of six percent. If they do this, the remaindermen are entitled to extinguishment of the lien. They are not entitled to an assignment of the mortgage, with the right to charge interest to the life tenant thereafter, since such interest would already be accounted for in calculating the present worth of the incumbrance.

The rule is frequently stated in terms of the present worth of the life tenant's liability to pay interest had the incumbrance remained, instead of the present worth of the mortgage lien, but these are merely different ways of arriving at the same result. The syllabus by the court in Engel v. Swenson et al., 254 N. W. 2 (Minn.), reads:

"A life tenant who redeems an outstanding mortgage lien on the premises in which he holds a life estate

is entitled to contribution from the remaindermen in an amount equal to the mortgage lien less the present worth of the life tenant's liability to pay interest during his expectancy."

Pomeroy, Equity Jurisprudence (5th ed.), vol. 4, sec. 1223, p. 665, states the rule thus:

"The rule is settled, that the present worth of an annuity equal to the annual interest running during the number of years which constitute his expected life represents the sum which A [the life tenant] is liable to pay as *his* individual indebtedness; the balance, after subtracting this sum from the mortgage debt actually paid to the mortgagee, is the amount which B [remainderman or reversioner] is liable to contribute." [2]

It is of course likely that present payment of the remaindermen's share would fall entirely upon Mary Perry. However, she is nine years younger than the life tenant, and if she failed to survive him, her interest goes to her children under the will. It is doubtful whether plaintiff John Petillo would join in any payment now since he is 10 years older than the life tenant and his interest, if he fails to survive the life tenant, goes to Mary Perry, if living, or to her children, if she is dead. If Mary Perry should pay as to his share also, his interest, if it ever comes into being, will be subjected to a lien for the appropriate amount, with which question we need not now be concerned. If she does not pay for him, defendants retain a lien, with

---

[2] A number of jurisdictions follow this rule for apportioning liability on a paid-off incumbrance: The life tenant is charged the present worth of the interest he would be liable to pay during his life expectancy, and the remaindermen the balance. See Murphy et al. v. May, 8 S. (2d) 442 (1942) (Ala.), In re Lee et ux., 213 N. W. 736, 737 (1927) (Minn.), In re Daily's Estate, 159 P. (2d) 327 (1945) (Mont.), Bartels v. Seefus et ux, 273 N. W. 485 (1937) (Neb.), Coughlin v. Kennedy et al., 28 A. (2d) 417 (1942) (N. J.), 87 A. L. R. 220, 222. The Coughlin case states the computation is to be made from mortality tables without giving any effect to the fact that life tenant there was in poor health.

right to enforcement, against his remainder interest. See Bartels v. Seefus, 132 Neb. 841, 273 N. W. 485.

Summarizing, my conclusions are: (1) That Mary Perry pay defendant Frank Petillo the agreed sum of $50 in adjustment of taxes; (2) that upon payment by plaintiff Mary Perry to defendants of the agreed sum of $536.38, with interest thereon from August 3, 1947 to the date of payment, a recordable release of the lien of the mortgage as to 7160 Torresdale Avenue be given to her by the holder of the mortgage, defendant Mary Petillo; (3) that upon payment by plaintiffs Mary Perry and John Petillo, or either of them, of such present sum as will be equivalent to $2,050 (the principal amount of the lien applicable to 7162 Torresdale Avenue) at the end of the life expectancy of the life tenant, Frank Petillo, based on the interest rate of six percent, to defendants, that defendants cause the mortgage to be satisfied and extinguished in its entirety, provided that the amounts due under (1) and (2) be also paid.

## Conclusions of Law

1(a) The liability of the life tenant, Frank Petillo, upon the mortgage was limited to payment of two thirds of the interest with respect to the mortgage debt, as stipulated in the will of testatrix, Ersillia de Marco.

(b) The payments previously made by Frank Petillo in reduction of principal were voluntary, and are not recoverable by him.

2. No change in the respective liabilities of the parties was brought about by the extension agreement of October 9, 1940.

3(a) The mortgage, which was purchased by Frank Petillo (through his nominee, Mary Petillo) on September 5, 1944, was a valid lien to the extent of its then principal sum, $3,075, against the properties 7160-

62 Torresdale Avenue, in the respective proportions of one third and two thirds.

(b) The purchase of the mortgage by Frank Petillo was, as to 7162 Torresdale, for the joint benefit of himself and the remaindermen, from whom he is entitled only to equitable contribution of their appropriate shares.

4 (a) The balance of principal applying to the property 7160 Torresdale Avenue, devised in fee to Mary Perry, has been reduced by payments by her to the sum of $536.38 (the figure agreed upon by counsel as representing the said balance).

(b) Upon payment by Mary Perry of this reduced principal sum, with accrued interest, to defendants, defendant Mary Petillo should be required to execute and deliver a recordable release of the lien of the mortgage as to 7160 Torresdale Avenue.

5. The balance of principal sum applying to 7162 Torresdale Avenue is $2,050 (at which figure it has remained since September 5, 1944), and the owners of the future interest are liable for this sum as of the end of the life estate of Frank Petillo.

6. No interest can accrue as to this portion of the principal sum of the mortgage, $2,050, since it is held in behalf of Frank Petillo, the life tenant, by his nominee.

7. Upon payment to defendants, by the owners of the future interest or either of them, of such present sum as will be equivalent to $2,050 at the end of the life estate (based on an interest rate of six percent), the holder of the mortgage, Mary Petillo, should be required to have it marked satisfied of record as to 7162 Torresdale Avenue.

8. Mary Perry should be required to pay the sum of $50 to defendant Frank Petillo, being the sum required to adjust an erroneous tax assessment against 7162

Torresdale Avenue which should have been against 7160 Torresdale Avenue.

9. Should the payments be made in accord to paragraphs 4 and 6 above, the bond and extension agreement accompanying the mortgage should be declared paid, cancelled and of no further effect as to all parties thereto.

### Decree Nisi

And now, to wit, June 10, 1949, this cause having come on to be heard on bill, answers and proofs, it is ordered, adjudged and decreed as follows:

(1) Plaintiff Mary Perry shall pay the sum of $50 to defendant Frank Petillo in adjustment of real estate taxes.

(2) Defendants may proceed to enforcement, by any appropriate remedies, of their mortgage lien on 7160 Torresdale Avenue, and their lien for reimbursement as to 7162 Torresdale Avenue, subject to the following terms and conditions:

(a) Upon payment by plaintiff Mary Perry to defendants of the sum of $536.38, plus accrued interest from August 3, 1947, defendant Mary Petillo shall execute and deliver to Mary Perry a recordable release of the lien of the above mentioned mortgage as to the property 7160 Torresdale Avenue, and

(b) Upon payment by plaintiffs Mary Perry and John Petillo or either of them, to defendants, of such present sum as shall be equivalent to the sum of $2,050 at the end of the life estate of defendant Frank Petillo (based on the life expectancy of the said Frank Petillo and the interest rate of six percent), defendants shall execute and deliver a release of lien as to 7162 Torresdale Avenue, to the said plaintiffs;

(c) Upon payment of the amounts set forth in paragraph 2(a) and 2(b) of this decree, defendant Mary Petillo shall cause the entire mortgage covering premises 7160 and 7162 Torresdale Avenue, to be

marked satisfied of record, and the said mortgage, together with the accompanying bond, and the extension agreement, shall be declared paid, cancelled and of no further effect as to all parties thereto.

(3) Each of the parties shall bear his or her own costs.

The prothonotary is directed to enter this decree nisi and to notify the parties or their attorneys of record, and if no exceptions are filed within 10 days thereafter, counsel for either of the parties may submit a form of final decree to be entered in the case.