Segall Estate (No. 2)

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

778

780

*Edward E. Dicker*, for exceptants.

*C. Leo Sutton, William J. Henrich, Jr.*, and *Dilworth, Paxson, Kalish, Kohn and Dilks*, contra.

## Opinion Sur Exceptions

BOLGER, J., December 2, 1960.—Several certificates, aggregating 587 shares of Broad Street Trust Company common stock, were found in the safe deposit box of Charles Segall following his death. They were registered in his name as trustee. With the exception of five shares of stock, all of the certificates were dated April 29, 1953. Exceptant claimed that these shares belonged to the testamentary estate of Charles Segall.

Reference to the testimony shows that there was a deed of trust created April 16, 1953, the corpus of which was to be $14,000. The terms of this trust were almost identical with the trust dated January 5, 1945. There was no fund anywhere showing that the $14,-000 had been paid into the trust. There is no accounting of this trust presently before the court.

The uncontradicted testimony of Robert Levin, Esq., who had represented the testator in his lifetime and all of the parties to the trust, is to the effect that with reference to the original trust, the res of which was real property, all parties in interest, in making individual income tax returns, considered that a certain leasehold which ran for a long term constituted a wasting asset and that depletion amounting to approximately $22,100 was actually recognized by all parties in interest.

Mr. Levin then explained to all parties, including the present exceptant, that of the 587 shares of stock in question, Mr. Segall undoubtedly intended to appropriate 257 shares having a value of approximately $14,000 for the purpose of the trust of 1953 and the remainder of the stock, viz., 330 shares was intended to represent the depreciation for which credit had been taken. This testimony was not contradicted. Following this explanation, a letter was then signed by all of the parties in interest, including the exceptant, directing Robert Levin, Esq., to allocate the 587 shares of stock as indicated. Thereupon, the transfers were actually made on the books of the Broad Street Trust Company and new certificates issued. The letter of instructions to Mr. Levin was in the nature of a family agreement, which is a favorite of the law, and must, therefore, be sustained: Brereton Estate, 388 Pa. 206; Hunter's Pennsylvania Orphans' Court Commonplace Book, vol. I, p. 55. There is nothing in the record to indicate that this agreement was not arrived at fairly after investigation. The learned auditing judge found there was no fraud. We are also satisfied that the exceptant estopped herself from questioning the validity and binding effect of the letter by later regularly accepting income for several years from the trust to which the shares of stock were allocated.

The second exception refers to the auditing judge's refusal to find that all payments in reduction of principal of the first mortgage secured upon the real estate were subject to the application of the equitable principle of equitable assignment for the use and advantage of the life tenant. The trust instrument is clear in directing that all carrying charges, including amortization of the mortgage, were to be paid before any income would be distributable from rentals received. It should further be noted that there was also authority expressly given to the trustee to maintain,

improve and keep the real estate in good repair. This authorization required a reasonable reserve against actual depreciation. Under these facts, the exceptant is not only not entitled to have such income restored to her as was done in Kramer's Estate, 59 D. & C. 329, but is also not entitled to any form of subrogation: Marshall's Estate, 278 Pa. 206.

The exceptions are dismissed and the adjudication is confirmed absolutely.